UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04-cv-126

| | |
|---|---|
| SAKIMA IBAN SALIH EL BEY, ) | |
| ) | |
| Plaintiff, ) | ORDER AND MEMORANDUM |
| v. ) | |
| ) | |
| BATTERY SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

Pro se Plaintiff Sakima Iban Salih El Bey, who describes himself as Moorish-American, was fired from his job at Battery Services's warehouse after four month's employment in February of 2004. He contends that he was fired because he would not obtain a driver's license, even though 1) he was hired to work in the warehouse, not make deliveries; 2) he does not need a license because of his status (presumably as a "National of the United States . . . Preamble Citizen"[1]); and 3) "Butch," a Caucasian employee at the warehouse who also did not have a driver's license, was neither fired nor asked to get a license. The plaintiff now seeks compensatory and punitive relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a) (First and Second Cause of Action), and North Carolina common law for intentional infliction of emotion distress (Third Cause of Action). Jurisdiction is present. 28 U.S.C. §§ 1331, 1367.

Presently before the Court is the defendant's Motion to Dismiss the plaintiff's case pursuant

---

[1] The Court notes that the plaintiff has made similar assertions in other cases. See Salih El Bey v. Miller, et al, No. 02-2 (W.D.N.C. filed Jan 4, 2002); Salih El Bey v. French, et al, No. 03-423 (W.D.N.C. filed Sept. 2, 2003); Salih El Bey v. Davis, et al, No. 05-237 (W.D.N.C. filed May 20, 2005); Salih El Bey v. Davis, et al, No. 05-3461 (D.S.C. filed Dec. 5, 2005).

1

to Fed. R. Civ. Pro. 12(b)(6). Having construed the Complaint liberally in favor of the plaintiff, taking as true all well-pleaded factual allegations and all reasonable inferences that may be drawn therefrom, the Court finds that it is clear that no relief could be granted to the plaintiff under any set of facts that could be proved consistent with his allegations. Specifically: 1) even assuming that the statute-of-limitations was tolled during the pendency of the plaintiff's application to proceed *in forma pauperis*, he did not file his Title VII claims within 90 days of receipt of his Right to Sue letter from the EEOC; and 2) termination of employment in violation of federal employment law is not "sufficiently outrageous" under North Carolina common law so as to permit recovery for intentional infliction of emotional distress.

## DISCUSSION

1. Plaintiff's Title VII Claims

Under 42 U.S.C. § 2000e-5(f)(1), an employee must file a civil action within 90 days of the receipt of the notice of right to sue. A Title VII claimant who fails to file suit within the ninety-day time period forfeits his right to pursue the claim. 42 U.S.C. § 2000e-16(c); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-150 (1984).

The Court presumes the plaintiff received his letter on February 29, 2004, three days after it was mailed on February 25. See Fed. R. Civ. P. 6(e); Baldwin, 466 U.S. at 148 n.1 (suggesting that rule 6(e) applies when the date of receipt of EEOC right-to-sue letter is unknown) (per curium). Eighteen days later, on March 18, the plaintiff filed his first application to proceed *in forma pauperis*, which the Court assumes successfully tolled the statute-of-limitations for the pendency of the application. See, e.g., Dempsey v. Harrison, 387 F. Supp. 2d 558, 561 (E.D.N.C. 2005) (holding

2

that a "number of courts" have held that "the statutory filing period should be tolled" until the petition has been [ruled on].") (citations omitted). The Court denied that motion on April 16th, on the grounds that the plaintiff "had failed to fully describe his financial situation." At this point, the statute-of-limitations clock resumed running, and the plaintiff was required to "act with dispatch." Williams-Guice v. Board of Education, 45 F.3d 161, 165 (7th Cir. 1995); see also Truitt v. County of Wayne, 148 F.3d 644, 647-48 (6th Cir. 1998); Jarrett v. U.S. Sprint Communication Co, 22 F.3d 256 (10th Cir. 1994). The plaintiff, however, waited until November 4, 2004 – 202 days later – to submit supplemental information to the Court. He further delayed another 60 days – until January 4, 2005 – to file a second IFP application, which was denied on January 14. And then waited another seven days to file his third application. The Court granted his application on March 4, 2005, and the plaintiff filed his Complaint the same day.

Excluding the pendency of the plaintiff's IFP applications, approximately 287 days elapsed between the time the plaintiff received his right-to-sue letter and when he filed his complaint. This is well beyond the 90-day limitation. No explanation has been provided for the delay, nor are there extenuating circumstances that might warrant further tolling. The Court notes that the plaintiff's pro se status provides no basis for extension of the 90- day filing period. See Baldwin, 466 U.S. 147. Nor may the procedural requirements of Title VII be disregarded by the Court out of sympathy for the plainitff's financial situation. Id. at 152; Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980). The plaintiff's Title VII claim thus is barred by the statute of limitations and shall be dismissed.[2]

---

[2] The plaintiff also claims that he was discriminated against in violation of 18 U.S.C. §§ 241, 242 and 8 U.S.C. § 1503(a). Neither applies to the present case. While Sections 241 and 242 make it a crime to willfully deprive someone of his constitutional rights or to become involved in a conspiracy to do so, they do not give rise to a civil action for damages, and neither the plaintiff nor this Court has the authority to issue a criminal complaint. Maine v. Taylor, 477 U.S. 131, 136 (1986). Section 1503(a) applies to individuals who are subject to deportation and are seeking a declaration of nationality. It has nothing to do with a civil action against non-governmental agencies for alleged discrimination.

2. <u>Plaintiff's Claim for Intentional Infliction of Emotional Distress</u>

To prevail on a claim for Intentional Infliction of Emotional Distress under North Carolina law, the plaintiff must allege that the defendant engaged in extreme and outrageous conduct and that this conduct was intended to cause, and did in fact cause, severe emotional distress. <u>Waddle v. Sparks</u>, 414 S.E.2d 22, 27 (N.C. 1992). The determination of whether conduct is extreme and outrageous is a question of law for the Court. <u>Lorbacher v. Housing Authority</u>, 493 S.E.2d 74, 82 (N.C. Ct. App. 1997).

Here, the plaintiff contends only that his employment was terminated when he was required to obtain a North Carolina's driver's license while a Caucasian employee was not. Rarely will conduct in the employment context rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress. <u>See</u>, e.g., <u>McKnight v. Simpson's Beauty Supply, Inc.</u>, 358 S.E.2d 107, 109 (N.C. App. 1987). And the Court finds that allegedly terminating the plaintiff's employment because of his race or national origin alone is not an act that "exceed[s] all bounds of decency," <u>West v. King's Dep't Store</u>, Inc., 365 S.E.2d 621, 625 (N.C. 1988), or that could be " 'regarded as atrocious, and utterly intolerable in a civilized community,' " <u>Wagoner v. Elkin City School Bd. of Educ.</u>, 440 S.E.2d 119, 123 (N.C.App. 1994) (citation omitted). <u>See</u>, e.g., <u>Lorbacher</u>, 493 S.E.2d 74, 81-82; <u>Frazier v. First Union Nat'l Bank</u>, 747 F. Supp. 1540, 1553 (W.D.N.C. 1990); <u>Pardasani v. Rack Room Shoes. Inc.</u>, 912 F. Supp. 187 (M.D.N.C. 1996); <u>Jackson v. Blue Dolphin Communications of N.C.</u>, 226 F. Supp. 2d 785, 791-92 (W.D.N.C. 2002). Accordingly, the plaintiff's claim for intentional infliction of emotional distress shall be dismissed.

**THEREFORE, IT IS HEREBY ORDERED THAT** Defendant Battery Service's Motion to Dismiss (Doc. No. 18) be **GRANTED** and Plaintiff Sakima Iban Salih El Bey's Case be **DISMISSED.** Accordingly, Plaintiff's Motion to Strike (Doc. No. 21) is **DENIED AS MOOT**.

Signed: January 29, 2007

Robert J. Conrad, Jr.
Chief United States District Judge